IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:18-CR-152 |
| | ) | |
| v. | ) | Counts 1 through 4: 18 U.S.C. § 1343 |
| | ) | (Wire Fraud) |
| AMRIT JASWANT SINGH CHAHAL, | ) | |
| | ) | Counts 5 through 8: 18 U.S.C. § 1348(1) |
| Defendant. | ) | (Securities and Commodities Fraud) |
| | ) | |
| | ) | Count 9: 18 U.S.C. § 1028A(a)(1) |
| | ) | (Aggravated Identity Theft) |
| | ) | |
| | ) | Forfeiture Notice |

## **INDICTMENT**

April 2018 Term - at Alexandria, Virginia

## **COUNTS 1 - 4**

(Wire Fraud)

THE GRAND JURY CHARGES THAT:

### **Introductory Allegations**

At all times material to this Indictment, unless otherwise specified below:

1.      The Kane Capital Investment Group, LLC ("Kane Capital") was a limited liability company formed in Virginia in or around 2014.

2.      Defendant AMRIT JASWANT SINGH CHAHAL ("CHAHAL") owned and was the registered agent of Kane Capital.  CHAHAL made all or substantially all business decisions on behalf of Kane Capital, and had complete control over all funds invested with Kane Capital.

3.      CHAHAL resided in Fairfax, Virginia, within the Eastern District of Virginia. CHAHAL managed, directed, and controlled the operations of Kane Capital primarily from within the Eastern District of Virginia.

4.      CHAHAL maintained a website for Kane Capital at www.kanecapitalgroup.com wherein he represented that Kane Capital provided "custom investment options" and had "several options, creating a flexible investment approach to any size portfolio." CHAHAL further represented through this website: "Whether your goal is longterm or short term income based, Kane Capital Group can form an investment strategy to fully suit your current and future needs."

5.      CHAHAL also maintained a webpage for Kane Capital on LinkedIn, a professional networking website. Kane Capital's LinkedIn webpage alleged that it was a "Private Capital Investment Group . . . specializing in absolute return investments."

6.      CHAHAL held out Kane Capital to potential investors and investors as a company that sought to earn profits and investment returns on behalf of its clients by purchasing, trading, or otherwise investing in commodities for future delivery, in options on commodities for future delivery, and other financial instruments.

7.      TradeStation Securities, Inc. ("TradeStation") was an online broker through which accountholders could trade securities, commodities for future delivery, and options on commodities for future delivery.

## Scheme And Artifice To Defraud

8.     Beginning no later than in or about 2015, and continuing through at least in or about March 2018, in the Eastern District of Virginia and elsewhere, defendant AMRIT JASWANT SINGH CHAHAL did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

## Purpose and Object of the Scheme

9.     It was the purpose and object of the scheme for CHAHAL to obtain and retain funds from investors in Kane Capital through materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

## Manner and Means of the Scheme

10.     In furtherance of the scheme to defraud, and to accomplish its unlawful objects, the following manner and means were used, among others:

11.     CHAHAL knowingly made materially false statements to investors and potential investors about the historical performance of Kane Capital, frequently claiming that Kane Capital had reaped substantial profits or earned substantial investment returns, when, as CHAHAL knew, Kane Capital had suffered significant trading losses.  CHAHAL sought to conceal and concealed his substantial trading losses from his investors and potential investors.

12.     CHAHAL knowingly made materially false statements to investors and potential investors that substantially overstated the amount of assets under management by Kane Capital.

13.     CHAHAL knowingly misappropriated funds entrusted to him by investors in Kane Capital, which funds were intended to be used for investments, to pay for CHAHAL's personal expenses.  CHAHAL did so without the knowledge or consent of the investors.

14. CHAHAL knowingly used funds from newer investors or recently deposited funds from existing investors with Kane Capital to pay other investors who had requested the withdrawal of their funds, without disclosing this practice to the investors. CHAHAL engaged in these fraudulent "Ponzi" style transactions: (a) to create the false appearance that Kane Capital was earning substantial returns; (b) to attract new investors and additional funds from existing investors; (c) to mask his substantial trading losses; (d) to obscure that he had used funds intended solely for investment to pay for his personal expenses; and (e) to conceal that he lacked sufficient funds to repay the investors who were requesting the withdrawal of their investment.

15. CHAHAL routinely created materially false and fraudulent account summary statements, bearing the Kane Capital name and logo, for accounts supposedly managed on behalf of investors in Kane Capital. These fraudulent statements purported to show, among other things, the type and amount of commodities for future delivery, options on commodities for future delivery, or other assets that Kane Capital supposedly had purchased on behalf of the investor, the value of these assets, and the amount of profit realized on behalf of the investor. In many instances, CHAHAL fabricated the entirety of these account statements, listing fictional commodities, options, or other assets that neither he nor Kane Capital had purchased on behalf of the investor, much less assets that had earned a profit for that investor. For example, CHAHAL frequently created fraudulent account statements for investors purporting to show that Kane Capital had purchased contracts for the future delivery of crude oil, when no such contracts had ever been purchased on behalf of the investor in question. CHAHAL routinely made these false and fraudulent account summary statements available to Kane Capital investors via the website www.kanecapitalgroup.com and at times by emailing copies of the fraudulent statements to investors.

16.     CHAHAL frequently advised investors that he would manage their funds, and execute trades on their behalf, by opening an account or accounts in the name of the investor at TradeStation, with CHAHAL and/or Kane Capital listed on the account as an agent authorized to trade on the investor's behalf. CHAHAL then routinely created falsified or altered TradeStation statements in the name of the investor. At times, CHAHAL altered a legitimate TradeStation statement to materially inflate the true balance held at TradeStation on behalf of the investor, or to materially overstate the amount or type of commodities or options purchased on behalf of the investor. On other occasions, CHAHAL created an entirely fabricated TradeStation statement for an account supposedly in the name of an investor, when no such account existed, and when no commodities or options whatsoever had been purchased on behalf of that investor.

17.     CHAHAL opened accounts at financial institutions in the names of certain investors, without the investors' knowledge or consent, to facilitate his embezzlement of funds entrusted to him by the investors.

## Conduct in Furtherance of the Scheme

18.     In furtherance of the scheme to defraud, and to effect the objects thereof, CHAHAL took or caused the following actions, among others, to be taken within the Eastern District of Virginia and elsewhere:

### Fraudulent Conduct Related to Investor JSC

19.     Investor JSC was an individual who resided in Fairfax, Virginia, within the Eastern District of Virginia. Investor JSC began investing with Kane Capital no later than in or around February 2015.

20. After Investor JSC made his or her initial investment, CHAHAL falsely represented that he and Kane Capital were earning 5% to 10% in investment returns each month. In fact, as CHAHAL knew, he was suffering substantial trading losses.

21. CHAHAL continued to make materially false representations to Investor JSC over the next several months, repeatedly telling Investor JSC that he and Kane Capital were reaping substantial returns on behalf of investors. In fact, as CHAHAL knew, the defendant continued to suffer substantial trading losses, but failed to disclose these losses to Investor JSC.

22. Based at least in part on CHAHAL's numerous false representations, beginning in or about March 2015, and continuing through in or about December 2017, Investor JSC made additional investments in Kane Capital, which Investor JSC intended to be used solely to make investments on his or her behalf. CHAHAL used a portion of the funds received from Investor JSC to pay for CHAHAL's personal expenses, and transferred a portion of the funds into personal bank and brokerage accounts in the name of CHAHAL, where the money was used for CHAHAL's personal benefit. CHAHAL further used funds from Investor JSC to repay other investors in Kane Capital who were requesting the withdrawal of their funds, without the knowledge or consent of Investor JSC.

Fraudulent Conduct Related to Investor DST

23. Investor DST was an individual who resided in McLean, Virginia, within the Eastern District of Virginia. Investor DST began investing with Kane Capital no later than in or around March 2015. After receiving the initial tranche of funds from Investor DST, CHAHAL used a portion of those funds to pay for CHAHAL's personal expenses, and transferred a portion of the funds into personal bank and brokerage accounts in the name of CHAHAL, where the

—

money was used for CHAHAL's personal benefit. CHAHAL did so without the knowledge or consent of Investor DST.

24. After Investor DST made his or her initial investment, in or around October 2015, CHAHAL falsely advised Investor DST that CHAHAL and Kane Capital had earned substantial returns on behalf of Investor DST. In fact, as CHAHAL knew, he had lost, spent, or misappropriated the majority of Investor DST's funds.

25. Based at least in part on CHAHAL's false representations, Investor DST decided to invest additional money with Kane Capital. On or about October 8, 2015, and October 9, 2015, Investor DST provided approximately $100,000 in additional funds to Kane Capital, intending those funds to be used solely to make investments on his or her behalf. CHAHAL spent a portion of these funds on CHAHAL's personal expenses, and misappropriated an additional portion of the funds by transferring them into personal bank and brokerage accounts in the name of CHAHAL, where the money was used for CHAHAL's personal benefit. CHAHAL did so without the knowledge or consent of Investor DST.

26. In or around October 2017, CHAHAL sent a fraudulent document to Investor DST that purported to be a statement from TradeStation for an account held jointly in the name of Kane Capital and Investor DST. This fraudulent statement purported to show that, as of October 9, 2017, the balance in the joint Kane Capital / Investor DST account was approximately $3,880,765.95. As CHAHAL knew, he had forged this document, and there was no account at TradeStation held jointly in the name of Kane Capital and Investor DST.

<u>Fraudulent Conduct Related to Investor JSG</u>

27. Investor JSG was an individual who resided in New Jersey.

28.     In or around August 2017, Investor JSG provided approximately $25,000 to Kane Capital, intending that those funds be used solely to make investments on his or her behalf. CHAHAL used at least a portion of those funds to pay Investor JCS, an earlier investor in Kane Capital, who was requesting the withdrawal of previously invested funds. CHAHAL did so without the knowledge or consent of Investor JSG or Investor JCS.

29.     In or around August 2017, CHAHAL created a false and fraudulent document purporting to be a TradeStation statement jointly in the name of Kane Capital and Investor JSG. The fraudulent document purported to show that, as of August 31, 2017, the balance in this TradeStation account was approximately $37,814.87. As CHAHAL knew, he had forged this document, and there was no account at TradeStation held jointly in the name of Kane Capital and Investor JSG.

30.     In or around October 2017, CHAHAL created another false and fraudulent document purporting to be an updated TradeStation statement for the account supposedly held jointly in the name of Kane Capital and Investor JSG. This fraudulent document purported to show that, as of October 16, 2017, the balance in this TradeStation account was approximately $41,956.76. As CHAHAL knew, he had forged this document, and there was no account at TradeStation held jointly in the name of Kane Capital and Investor JSG.

31.     In or around November 2017, Investor JSG provided approximately $25,000 in additional funds to Kane Capital, intending that those funds be used solely to make investments on his or her behalf. CHAHAL used at least a portion of these funds to pay Investor AG, an earlier investor in Kane Capital who was requesting the withdrawal of his or her funds. CHAHAL did so without the knowledge or consent of Investor JSG or Investor AG.

Fraudulent Conduct Related to Investor MAT

32.     Investor MAT was an individual who resided in New Jersey.

33.     In or about November 2016, Investor MAT invested approximately $30,000 with Kane Capital.  Investor MAT made this initial investment based at least in part on the honest but false belief that Kane Capital had earned substantial returns on behalf of another investor.

34.     In or about March 2017, CHAHAL falsely advised Investor MAT that his or her initial investment with Kane Capital had more than doubled in value.  In fact, as CHAHAL knew, the majority of Investor MAT's initial investment had been lost, spent, misappropriated, or used to pay other investors in Kane Capital.

35.     Based at least in part on CHAHAL's false representations, Investor MAT decided to invest additional money with Kane Capital.  On or about March 24, 2017, acting at CHAHAL's direction, Investor MAT sent a check to TradeStation in the amount of $150,000.  The funds from this check were then used to establish an account at TradeStation that CHAHAL would manage on behalf of Investor MAT.

36.     After the account was opened at TradeStation on behalf of Investor MAT, over the course of the next several months, CHAHAL lost, spent, misappropriated, or used a substantial portion of the funds in this account to pay other investors in Kane Capital.  CHAHAL did so without the knowledge or consent of Investor MAT.

37.     On or about May 24, 2017, while there were still funds in Investor MAT's account at TradeStation, CHAHAL opened a bank account online at Ally Bank in the name of Investor MAT, without Investor MAT's knowledge or consent.  CHAHAL did so to circumvent TradeStation's policy that allowed funds to be transferred out of a TradeStation account only if those funds were transferred into a like-titled account.  Thus, by opening the fraudulent account

in the name of Investor MAT at Ally Bank, CHAHAL facilitated the embezzlement of funds out of Investor MAT's TradeStation account, without Investor MAT's knowledge or consent.

38.     Beginning in or around May 2017, and continuing through in or around August 2017, CHAHAL transferred funds out of Investor MAT's account at TradeStation and into the Ally Bank account that CHAHAL had opened fraudulently in Investor MAT's name. Once the funds had been transferred into the Ally Bank account, CHAHAL forwarded at least a portion of those funds into a personal account in CHAHAL's name at Wells Fargo Bank, N.A., where the funds were used for CHAHAL's personal benefit.

39.     On or about November 6, 2017, CHAHAL spoke to Investor MAT. CHAHAL made numerous materially false representations to Investor MAT during the conversation. Among other things, CHAHAL falsely represented that Kane Capital averaged "between like 28% to 30, 34% return per year . . . usually more, but I like to average it out," and that Kane Capital was then "managing just over $5,000,000." In truth, as CHAHAL knew, Kane Capital had suffered significant trading losses. CHAHAL further knew that, as of November 2017, he and Kane Capital were in possession of no more than several thousand dollars in investors' funds.

40.     During the conversation on or about November 6, 2017, CHAHAL also falsely represented that he was managing two accounts on behalf of Investor MAT, explaining, "they're both TradeStation . . . one is your joint account with your [spouse] and one was your private account that you started first." As CHAHAL knew, these representations were false, in that CHAHAL had opened only one account at TradeStation on behalf of Investor MAT.

41.     On or about November 6, 2017, CHAHAL sent two forged and fraudulent documents to Investor MAT. One of these documents purported to be a TradeStation statement

for an account in the name of Investor MAT and his or her spouse. This document purported to show that, as of October 27, 2017, the balance in this TradeStation account was approximately $206,043.63. CHAHAL had forged this document by altering the real statement for Investor MAT's TradeStation account, which showed in truth that the balance as of October 27, 2017, was only $1,043.63. The second forged document purported to be a TradeStation statement for another account supposedly held jointly in the names of Investor MAT and CHAHAL. This document purported to show that, as of October 27, 2017, the balance in this TradeStation account was $71,077.93. As CHAHAL knew, no such second account existed, and CHAHAL had forged this second document.

<u>Fraudulent Conduct Related to Undercover Law Enforcement Agent</u>

42.     On or about December 7, 2017, at Fairfax, CHAHAL met with an individual who, unbeknownst to the defendant, was an undercover law enforcement agent (the "UC"). The UC was posing as a potential investor in Kane Capital. During the meeting, CHAHAL made numerous statements which he knew to be materially false in an attempt to induce the UC to invest in Kane Capital. Among other things, CHAHAL falsely represented that: (a) all of Kane Capital's investors' funds were maintained at TradeStation; (b) Kane Capital had earned a return of at least 28% during the first two quarters of 2017; (c) none of Kane Capital's clients had ever lost money; (d) he guaranteed his clients' principal investment against loss; and (e) he had earned profits on behalf of Investor MAT that doubled Investor MAT's initial investment over the course of approximately 18 months.

## Use Of Interstate Wires

43.     On or about the dates listed below, for the purpose of executing the above-described scheme, in the Eastern District of Virginia and elsewhere, AMRIT JASWANT SINGH CHAHAL, defendant herein, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, as described below:

| Count | Approx. Date | Description |
|:---:|:---:|:---|
| 1 | 5/24/2017 | electronic transmission of an application to open a bank account at Ally Bank in the name of Investor MAT from a computer in the Eastern District of Virginia to computers hosting Ally Bank's website outside of Virginia |
| 2 | 8/3/2017 | electronic communication to initiate the transfer of $3,000 from an account at Ally Bank in the name of Investor MAT to an account at Wells Fargo Bank, N.A. controlled by CHAHAL, which communication was sent from a computer in the Eastern District of Virginia to computers hosting Ally Bank's website outside of Virginia |
| 3 | 11/6/2017 | electronic transmission of a forged document purporting to be a TradeStation statement for an account in the name of Investor MAT and his/her spouse, which was transmitted from a computer in the Eastern District of Virginia to computers outside of Virginia |
| 4 | 11/6/2017 | electronic transmission of a forged document purporting to be a TradeStation statement for an account in the name of Investor MAT and CHAHAL, which was transmitted from a computer in the Eastern District of Virginia to computers outside of Virginia |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNTS 5 - 8

(Securities and Commodities Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

44.      Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as though set forth in full herein.

45.      Beginning no later than in or about 2015, and continuing through at least in or about March 2018, in the Eastern District of Virginia and elsewhere, defendant AMRIT JASWANT SINGH CHAHAL did knowingly devise and intend to devise a scheme and artifice to defraud any person in connection with any commodity for future delivery, and in connection with any option on a commodity for future delivery.

### Purpose and Object of the Scheme

46.      It was the purpose and object of the scheme for CHAHAL to obtain and retain funds from investors in Kane Capital through materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, relating to commodities for future delivery, and relating to options on commodities for future delivery.

### Manner and Means of the Scheme

47.      The manner and means of the scheme and artifice to defraud are alleged in paragraphs 10 through 17 of this Indictment, which paragraphs are realleged and incorporated by reference as though set forth in full herein.

**Executions**

48.     On or about the dates listed below, in the Eastern District of Virginia and

elsewhere, AMRIT JASWANT SINGH CHAHAL, defendant herein, knowingly executed the

above-described scheme and artifice to defraud as follows:

| Count | Approx. Date | Transaction |
|-------|------|-------------|
| 5 | 10/9/2015 | deposit of $100,000 in checks from Investor DST into the Wells Fargo Bank, N.A. account of Kane Capital Investment Group in McLean, Virginia |
| 6 | 12/14/2015 | deposit of $42,000 check from Investor CL into the Wells Fargo Bank, N.A. account of Kane Capital Investment Group in Fairfax, Virginia |
| 7 | 2/10/2016 | deposit of $10,000 check from Investor AMS into the Wells Fargo Bank, N.A. account of Kane Capital Investment Group in Fairfax, Virginia |
| 8 | 12/9/2016 | deposit of $5,000 check from Investor PPP into the Wells Fargo Bank, N.A. account of Kane Capital Investment Group in Fairfax, Virginia |

(In violation of Title 18, United States Code, Sections 1348(1) and 2.)

## COUNT 9

(Aggravated Identity Theft)

THE GRAND JURY FURTHER CHARGES THAT:

49.     On or about May 24, 2017, within the Eastern District of Virginia and elsewhere,

### AMRIT JASWANT SINGH CHAHAL,

defendant herein, during and in relation to the wire fraud alleged in Count 1 of this Indictment,

knowingly transferred, possessed, and used, without lawful authority, a means of identification

of another person, namely, the name, social security number, and date of birth of Investor MAT,

knowing that the means of identification belonged to another actual person.

(In violation of Title 18, United States Code, Section 1028A(a)(1).)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY DESCRIBED BELOW IS SUBJECT TO FORFEITURE:

50.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant AMRIT JASWANT SINGH CHAHAL is hereby notified that, if convicted of an offense alleged in Counts 1 through 8 of this Indictment, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interest in any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as the result of the Counts of conviction. That property includes, but is not limited to the following:

a.      Approximately $7,547.41 seized from account number 5569513855 in the name of Amrit J. Chahal at Wells Fargo Bank.

51.     If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute property, including but not limited to the following:

a.      A sum of money equal to at least $1,205,249.90 in United States currency, representing the amount of proceeds obtained as a result of the offenses.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

Tracy Doherty-McCormick
Acting United States Attorney

By:

Matthew Burke
Jamar K. Walker
Assistant United States Attorneys

A TRUE BILL

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

_____
FOREPERSON OF THE GRAND JURY